# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# WESTERN DIVISION

UNITED STATES OF AMERICA                                                                PLAINTIFF

v.                              NO. 4:06CR00218-02 JLH

DOMINIC R. JACKSON                                                                      DEFENDANT

## OPINION AND ORDER

Dominic R. Jackson filed a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence based upon a claim that he was denied effective assistance of counsel. He asserted three bases for his contention that he was denied effective assistance of counsel. First, he argued that his lawyer, R. Brannon Sloan, Jr., was ineffective for failing to comply with Rule 12(c) of the Federal Rules of Criminal Procedure. Secondly, he argued that Sloan was ineffective for failing to investigate and call potential witnesses. Third, he argued that Sloan was ineffective for failing to cross-examine the case agent properly. The Court ascertained from the record alone that the first and third arguments advanced by Jackson were without merit. Document #194. The Court has now conducted an evidentiary hearing on Jackson's second argument. For reasons that will be explained, Jackson's motion is denied. Document #174.

Jackson was indicted and convicted on six counts of drug-related offenses.[1] On Count 1, the jury found Jackson guilty of possession with intent to distribute 50 grams or more of cocaine base. On Count 2, the jury found him guilty of conspiracy to possess with intent to distribute 50 grams or more of cocaine base. On Count 3, the jury found him guilty of conspiracy to possess with intent to distribute 200 grams of cocaine hydrochloride. On Count 4, the jury found him guilty of possession

---

[1] Elias Rhodes was indicted with Jackson on all six counts. On the day before trial, Rhodes entered into a plea agreement pursuant to which he entered a plea of guilty on Counts 2 and 6, and the remaining counts were dismissed as to him.

with intent to distribute less than 5 kilograms of marijuana. On Count 5, the jury found him guilty of conspiracy to possess with intent to distribute less than 5 kilograms of marijuana. On Count 6, the jury found him guilty of possessing a firearm during and in relation to and in furtherance of a drug trafficking crime.

The charges were based upon the results of a search of the premises at 3505 West 25th Street, Little Rock, Arkansas, during the morning of November 3, 2005. Information provided to law enforcement officers several days before the search indicated that Elias Rhodes and Peter Robinson lived at the address, but at trial Robinson testified that he lived across the street and leased the property for Rhodes's benefit because Rhodes was a long-time friend who had no place to stay. On October 29, 2005, a confidential informant went into the house and obtained narcotics from Robinson.[2]

The house was placed under surveillance at 7:30 the morning that the search warrant was executed. There were four vehicles in the backyard, including a white Jeep and a red Chevrolet Caprice. Two couches were in the living room, one green and one white. An entertainment center was located in the living room in a place where someone sitting on the white couch would be facing it. When the officers entered the house to conduct the search, they found Jackson sleeping on the white couch, which was near the green one. Two firearms were found in the green couch, underneath the couch cushion. A bag of marijuana was found in the white couch, also underneath the couch cushion. In the corner of the living room, the officers found a brick of marijuana in a Budweiser cardboard container. Bags of narcotics were found on the entertainment center, along with an aerosol

---

[2] Robinson was not charged. The government promised Robinson that if he would testify truthfully at trial he would not be charged.

can with a false bottom containing seven individual bags of crack cocaine packaged for sale. Also on the entertainment center, the officers found a white set of scales and a black digital scale.

Rhodes was in the bedroom when the search warrant was executed. The officers found a bag of crack cocaine in his pocket. Also in the bedroom, the officers found a cigar box containing $1,078 in currency. Near the cigar box, the officers found a white plastic bag containing a brick of marijuana. Officers also found bags of powder cocaine in the bedroom.

As noted, when the search warrant was executed, Jackson was asleep on the white couch, in which was found marijuana. He was in close proximity to the green couch where the two firearms were found. A person sitting on the couch where he was sleeping would see the entertainment center where narcotics and the scales were found. The aerosol can with a false bottom in which narcotics had been packaged for sale also sat on that entertainment center.

During the course of the search, Jackson was interrogated. He told the interrogating officer that he had purchased the red Chevrolet Caprice approximately three days earlier, and that he had a bag of marijuana in the car. A search of the car found two bags of marijuana in the front seat. The officers also found on the floor an aerosol can with a false bottom in which were found bags of marijuana and bags of crack cocaine packaged individually for sale in packaging similar to the packaging found in the house. The total weight of the crack cocaine found in the vehicle was 6.5083 grams. The total weight of the marijuana found in the vehicle was 12.6 grams. An officer testified that these are distributable amounts.

Including the narcotics found in the house and in the car, the officers found 71 grams of crack cocaine, 4,234 grams of marijuana, and 227.1 grams of cocaine hydrochloride.

To prevail on a claim of ineffective assistance of counsel, a defendant must show that his lawyer's performance was deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984). Proving that counsel was deficient "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. "Judicial scrutiny of counsel's performance must be highly deferential." *Id*. at 689, 104 S. Ct. at 2065. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigations are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id*. at 690-91, 104 S. Ct. at 2066. Because of the distorting effects of hindsight and the difficulty of viewing counsel's representation of the client from the perspective available to defense counsel at the time of trial, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . ." *Id*. Proving that the deficient performance prejudiced the defense requires showing that there is a reasonable probability that, but for defense counsel's mistakes, the result of the proceeding would have been different. *Id*. at 694, 104 S. Ct. at 2068. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. "When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id*. at 695, 104 S. Ct. at 2068-69. In determining whether there is a reasonable probability that but for counsel's mistakes the result would have been different, the Court must consider the totality of the evidence before the judge or the jury. *Id*. at 695, 104 S. Ct. at 2069.

Part of the defense strategy was to prove that Jackson did not live at 3505 West 25th Street and therefore was not in possession of the guns and drugs there, nor was he in a conspiracy with Rhodes, who did live there. At the evidentiary hearing on his section 2255 motion, Jackson presented eight potential witnesses whom he contended that Sloan should have called at trial to establish that, during the time in question, he lived with his mother at 3101 West 15th Street in Little Rock, rather than 3505 West 25th Street. Jackson also testified and, on cross-examination, conceded that he had not given the names of these eight witnesses, other than his mother, to Sloan.

Sloan also testified. Sloan was admitted to the bar in 1991. He became a member of this Court's CJA panel in 1992. When this case was tried in 2009, Sloan had been licensed as an attorney for nearly eighteen years, and he had been a member of the CJA panel for seventeen. Criminal defense comprises approximately one-half of his practice.

Sloan testified that Jackson told him that he was living with his mother. When Sloan asked Jackson who was the person closest to him who could confirm that he lived with his mother, Jackson identified his girlfriend, Conshondria Houston, as well as his mother, Curtistine Handy. Sloan decided not to call Handy because she had prior felony convictions related to drug distribution, and he did not think it was good strategy to call her. He called Houston, who testified that during the time in question she lived with Jackson at his mother's house and that the two of them had a son together. In addition to Houston's testimony, to prove that Jackson did not live in the house where the drugs were found, Sloan presented evidence that the house at 3505 West 25th Street was leased to Elias Rhodes and Peter Robinson, not to Jackson; that on October 24, 2005, the landlord told a drug task force officer that Rhodes and Robinson were living at 3505 West 25th Street but did not mention Jackson; that the utilities at that address were not in Jackson's name; that Jackson told the

5

interrogating officer that he lived at 3101 West 15th Street; that none of Jackson's clothes or personal items were found inside the house at 3505 West 25th Street; that none of the keys taken from Jackson when he was searched were house keys; that an Arkansas Health Department appointment reminder slip found during the search with Jackson's name on it bore the address of 3101 West 15th Street, not 3505 West 25th Street; and that when he was booked at the Pulaski County Jail Jackson listed his address as 3101 West 15th Street.

Sloan's performance was not deficient for failing to call the eight potential witnesses who testified at the section 2255 hearing.

First, the testimony would have been cumulative to the evidence that was presented at trial. The Eighth Circuit has held in at least three cases that it was not ineffective assistance for counsel to fail to introduce evidence that would have been cumulative. *Winfield v. Roper*, 460 F.3d 1026, 1033 (8th Cir. 2006); *Bucklew v. Luebbers*, 436 F.3d 1010, 1019 (8th Cir. 2006); *Hall v. Luebbers*, 296 F.3d 685, 694 (8th Cir. 2002).

Furthermore, three of the eight potential witnesses, including Jackson's mother, had felony drug convictions. Sloan testified that he would not have called a witness who had a felony drug conviction to establish a fact if he had another witness who had not been convicted of a felony to establish the fact. Houston, whom he did call as a witness, had no felony convictions.

During the section 2255 hearing, it was argued that Sloan should have called Jackson's mother after Houston testified because, on cross-examination, the prosecutor asked Houston whether she knew that Handy had multiple convictions for drug dealing. Once that fact was presented to the jury, Jackson argues, there was no strategic reason not to call Curtistine Handy. That argument fails, however, because the Court sustained Sloan's objection to the prosecutor's question, struck the

6

question from the record, and ordered the jury to disregard it. If Sloan had thereafter called Handy, she would have been subject to impeachment based on her prior felony convictions, and the specific fact that the Court had ordered the jury not to consider would have been presented to them. It was a reasonable trial strategy for Sloan to maintain his objection to the question regarding Handy's drug convictions, which the Court sustained, rather than calling her to testify and running the risk of allowing the jury to consider that Jackson's mother, with whom he claimed to be living, had felony convictions for distributing drugs.

Of the other five potential witnesses, one, Megan Hubbard, testified that during the time in question she was Jackson's girlfriend, that she spent three or four nights each week with him at his mother's house, and that she conceived his child during this time. Her testimony appears to be in direct conflict with Houston's trial testimony. Houston testified that, during the relevant period of time, she was living with Jackson at his mother's house, and the only other person who lived there was his mother. Sloan was not ineffective for failing to call Hubbard, in addition to Houston, as a witness at trial because calling both of them likely would have been detrimental to Jackson's defense. *Cf. Schlup v. Armontrout*, 941 F.2d 631, 639 (8th Cir. 1991) (counsel was not ineffective for failing to interview and call witnesses whose testimony could be repetitive or potentially damaging, especially when the defendant failed to inform counsel of the possibilities of these witnesses with regard to an alibi defense).

None of the other four potential witnesses lived at 3101 West 15th Street during the time in question. One was a cousin who would come to the house on a fairly regular basis, and the other three were neighbors who believed that Jackson resided at that house. None of them could have added anything of consequence to Houston's trial testimony.

Sloan testified that it is his practice as a criminal defense lawyer not to call more witnesses than are necessary to establish a fact because doing so runs the risk that some unanticipated, detrimental testimony might be elicited from the additional witness or witnesses – which is a reasonable trial strategy. Here, Sloan called the person whom he believed would be the best witness to establish that Jackson was living with his mother, not at the house where the drugs were found, during the relevant time in question, and he had a sound strategic reason for not attempting to find additional witnesses to testify to that same fact. He reasonably decided to cut off further investigation to locate additional witnesses to testify that Jackson was living at his mother's house. *Cf. Forsyth v. Ault*, 537 F.3d 887, 892 (8th Cir. 2008); *Winfield*, 460 F.3d at 1034.

Sloan vigorously and effectively represented Jackson. He conducted a reasonably thorough investigation. He planned an intelligent trial strategy, and he executed it well at trial. His performance was well within the wide range of reasonable professional assistance.

Moreover, it is not reasonably probable that calling some or all of the eight potential witnesses would have changed the outcome of the trial. Those witnesses would have testified that Jackson resided with his mother and had his personal belongings at her house. The jury knew, however, that Jackson had a residence somewhere other than 3505 West 25th Street because, when the search warrant was executed at that address, none of Jackson's clothes or other personal belongings were found. Houston's testimony, along with the health department slip, established that Jackson had a residence at his mother's house located at 3101 West 15th Street. Thus, these additional witnesses would have done little more than confirm a fact that was otherwise established.

The evidence that Jackson conspired with Rhodes to distribute narcotics was: (1) Jackson had distributable amounts of crack cocaine and marijuana in his car; (2) the drugs were packaged for sale

in plastic bags similar to the drugs in the house where Rhodes lived; (3) some of the drugs in Jackson's car were hidden in an aerosol can in a manner similar to drugs found in the house; (4) Jackson was regularly present at Rhodes's house for a period of three weeks while drug trafficking was taking place; and (5) Jackson was sleeping on the couch where marijuana was hidden with narcotics and paraphernalia for drug trafficking in plain view, near a place where two guns were kept. On the possession charges, the evidence was similar. Robinson, who lived across the street from the house at 3505 West 25th Street, testified that he believed that Jackson had been living there for approximately three weeks before the execution of the search warrant. Jackson, himself, told a policeman that Rhodes had given him the marijuana to smoke everyday for the three weeks preceding the execution of the search warrant. Although none of the clothes or personal items located inside the house were identified as belonging to Jackson, he was sleeping there on the morning of the execution of the search warrant as though he had spent the night there. His car was already at the house when surveillance began at 7:30 in the morning. He was sleeping on a couch with marijuana concealed under a cushion. He was the person nearest to the two firearms that were located underneath the cushions on the other couch, and he was also the person nearest to the entertainment center on which narcotics and paraphernalia for selling narcotics were located. In short, (1) Jackson was in the house every day for a period of three weeks prior to the execution of the search warrant; (2) Jackson was trusted enough by Rhodes that he was sleeping in the room with a large quantity of drugs and drug paraphernalia, as well as firearms; (3) Jackson was the person in closest proximity to the narcotics and the firearms in the living room; and (4) Jackson had narcotics in his vehicle, packaged for individual sale, and concealed like those in the house.

It is not reasonably probable that, if Sloan had called some or all of the eight potential witnesses presented at the section 2255 hearing, the result would have been different. In light of the totality of the evidence, Sloan's failure to call these potential witnesses does not undermine confidence in the outcome. There is no reasonable probability that, had one or more of these potential witnesses been called, the jury would have had a reasonable doubt concerning guilt.

## CONCLUSION

For the reasons stated, Dominic Jackson's motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 is DENIED. Document #174. Because Jackson has not made a substantial showing that he was denied any constitutional right, no certificate of appealability will be issued.

IT IS SO ORDERED this 28th day of June, 2013.

*J. Leon Holmes*
_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE